IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| FRED T. CAPERTON, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:15CV00036 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | By: Hon. Glen E. Conrad |
| TRANSPORTATION, et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

In this action, which was removed from the Circuit Court of Culpeper County, Fred Caperton, Thirty Three, Inc. ("Thirty Three"), and Appearance Landscaping & Maintenance, Inc. ("Appearance Landscaping") assert claims under 42 U.S.C. § 1983 and Virginia law against the Virginia Department of Transportation ("VDOT") and two VDOT employees, Emmett Heltzel and Angelika Babb. The defendants have moved to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the plaintiffs' claims under § 1983 will be dismissed and the remaining state-law claims will be remanded to state court.

### Background

The following facts, taken from the plaintiffs' complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Caperton, who resides in Culpeper, Virginia, operates two companies that provide landscaping, maintenance, winter weather preparation, and snow and ice removal services. One of those companies, Appearance Landscaping, was formed in January of 2006. The other, Continental Land Development, Inc. ("Continental"), was formed in July of 2006.

Following its incorporation, Continental successfully bid on a number of contracts with VDOT for the performance of snow removal services. Continental also entered into snow removal equipment agreements ("M-7B Agreements") with VDOT, pursuant to which Continental provided equipment on an on-call basis.

Continental was awarded snow removal contracts for three routes during the winter of 2013-2014 (the "2013-2014 Route Bid Contracts"). In January of 2014, Continental received complaints from VDOT personnel regarding the company's work. That same month, VDOT issued Notices of Contract Deficiencies. Although Continental disputed the validity of VDOT's complaints and took actions to remedy the alleged deficiencies in the company's work, VDOT issued Notices of Contract Termination to Continental on February 10 and 11, 2014, which terminated two of the 2013-2014 Route Bid Contracts for cause and the third for convenience. Continental received no further communication from VDOT after these notices were issued.

In February of 2014, one of Caperton's relatives contacted a member of the Virginia House of Delegates and a representative from the Office of the Governor, and requested that they look into VDOT's decision to terminate Continental's contracts. Caperton's relative also provided information regarding "an incident in the winter of 2013-2014," during which "Caperton and other vendors were subjected to improper sexual advances and touching by VDOT employees." Compl. ¶ 26. After these concerns were raised by Caperton's relative, the relative was advised that an investigation had been conducted by VDOT, and that VDOT was unable to substantiate the relative's allegations.

In March of 2014, Caperton's wife, Lauren Caperton ("Lauren"), formed Thirty Three for the purpose of providing hauling, maintenance, winter weather preparation, and snow and ice removal services. A few months later, Heltzel, a site maintenance engineer for VDOT, "issued

2

internal correspondence to VDOT Maintenance Managers, Infrastructure Managers, and Assistant District Administrators [advising] that VDOT would not do business with either Continental Land Development, Inc. or Thirty Three, Inc." Id. ¶ 30.  Continental and Thirty Three received no notice to this effect, and neither company was provided the opportunity to be heard by Heltzel.

On September 17, 2014, Caperton submitted an M-7B Agreement proposal to VDOT on behalf of Thirty Three, which contained his signature.  The plaintiffs allege that Babb, a procurement manager for VDOT, "instructed other VDOT personnel not to accept any M-7B Agreement proposals signed by Mr. Caperton or any other agreements indicating that any portion of the work would be performed by Mr. Caperton or by vehicles or equipment owned by Mr. Caperton." Id. ¶ 34.  Neither Caperton nor his wife received any notice from VDOT in this regard.  At some point thereafter, a representative of VDOT advised Caperton that Thirty Three's M-7B Agreement proposal would not be accepted by VDOT since he had submitted it on the company's behalf.

On September 29, 2014, Caperton submitted an M-7B Agreement to VDOT on behalf of Appearance Landscaping.  Steve Shannon, a VDOT employee, advised Caperton that VDOT would not accept any contract proposal or bid that was submitted by Caperton or included his name.

After Thirty Three's M-7B Agreement proposal was rejected by VDOT, Lauren emailed Babb and requested an explanation.   In response, Babb indicated that "VDOT cannot and does not prohibit any vendor from submitting a bid." Id. ¶ 39 (internal quotation marks omitted).

On October 1, 2014, Caperton emailed a VDOT contracts administrator and asked whether his vehicles could be leased to other vendors that perform snow removal services for VDOT.   In response, a VDOT infrastructure manger advised Caperton that "the decision not to accept a

3

proposal . . . was based on an investigation of a bidder's qualifications." Id. ¶ 41. The plaintiffs claim that this statement was false, and that VDOT, Heltzel, and Babb "had predetermined to not accept any bid having any nexus to [Caperton] and performed no actual investigation . . . ." Id.

On October 10, 2014, counsel for Thirty Three sent Babb a letter rebutting the "facts and findings" in her earlier correspondence. Id. ¶ 42. Babb sent a response to counsel on October 20, 2014. In her response, Babb indicated, "for the first time, that Thirty Three . . . had been determined a Non-Responsible Bidder by VDOT as that term is used in the [Virginia Public Procurement Act (VPPA)]." Id. ¶ 43. "No further opportunities to be heard were provided by Defendant Babb." Id.

## Procedural History

On April 23, 2015, Caperton, Thirty Three, and Appearance Landscaping filed the instant action against VDOT, Heltzel, and Babb in the Circuit Court of Culpeper County. In Count I of the complaint, the plaintiffs claim that Heltzel and Babb "violat[ed]" 42 U.S.C. § 1983 by depriving them of their ability to participate in the procurement process "in derogation [of] the rights and process provided by the VPPA." Id. ¶¶ 49-54. In Count II, the plaintiffs claim that VDOT "violat[ed]" 42 U.S.C. § 1983 by "conduct[ing] its procurement process in violation of the VPPA, in derogation of the procedures demanded by [the] Virginia Code[,] and without proper oversight." Id. ¶ 61. In Count III, the plaintiffs claim that the defendants violated their rights under the VPPA. In Count IV, the plaintiffs claim that the defendants retaliated against them based on the complaints made by Caperton's relative, in violation of Virginia's Fraud and Abuse Whistle Blower Protection Act. The plaintiffs seek monetary damages and injunctive relief.

On July 8, 2015, the defendants removed the case to this court, asserting federal question jurisdiction under 28 U.S.C. § 1331. Upon removal, the defendants moved to dismiss the

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on September 9, 2015. The motion has been fully briefed and is ripe for review.

**Standard of Review**

When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

I.     **Claims under 42 U.S.C. § 1983**

In Counts One and Two of the complaint, the plaintiffs assert claims against the defendants under 42 U.S.C. § 1983, which imposes liability on state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In moving to dismiss these counts, the defendants argue that VDOT is immune from liability under the Eleventh Amendment and that the plaintiffs' allegations are otherwise insufficient to state a plausible claim for relief. For the following reasons, the court agrees.

5

## A.  **VDOT**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state."  U.S. Const. amend. XI.  Although the language of the Eleventh Amendment does not explicitly refer to suits brought against a state by one of its own citizens, it has been construed to bar such suits.  See Edelman v. Jordan, 415 U.S. 651, 663 (1974).  This immunity also extends to "state agents and state instrumentalities," Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), which are considered "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

In this case, the plaintiffs do not dispute that VDOT is a state agency.  Nor do they assert that the Commonwealth's Eleventh Amendment immunity has been waived by VDOT or abrogated by Congress.  See In re Sec'y of Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1149 (4th Cir. 1993) (noting that "it has long been settled that 42 U.S.C. § 1983 does not effect such an abrogation").  Instead, the plaintiffs claim that their allegations against VDOT are sufficient to invoke the exception to Eleventh Amendment immunity first recognized in Ex parte Young, 209 U.S. 123 (1908), which "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law on the rationale that such suit is not a suit against the state for purposes of the Eleventh Amendment."  McBurney v. Cuccinelli, 616 F.3d 393, 394 (4th Cir. 2010).  That exception, however, applies only to claims against state officials.  The Supreme Court has made clear that it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  Puerto Rico Aqueduct &

6

Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Thus, the mere fact that the plaintiffs seek injunctive relief does not preclude the application of the Eleventh Amendment. Because the immunity afforded to VDOT has not been abrogated or waived, the plaintiffs' § 1983 claims against VDOT must be dismissed.

      **B.**    **Heltzel and Babb**

      The plaintiffs also filed suit under § 1983 against Heltzel and Babb. In response to the pending motion, the plaintiffs clarify that Heltzel and Babb are named as defendants solely in their individual capacities. Consequently, the § 1983 claims against the individual defendants are not barred by the Eleventh Amendment. See Papasan v. Allain, 478 U.S. 265, 278 n.11 (1986) ("When a state official is sued and held liable in his individual capacity, . . . even damages may be awarded."). Nonetheless, the court concludes that the plaintiffs' allegations against Heltzel and Babb are insufficient to state a plausible claim for relief.

      As an initial matter, the court notes that the plaintiffs repeatedly allege in Count I of the complaint that Heltzel and Babb "violat[ed]" § 1983 by taking actions "in derogation of [the plaintiffs' rights] rights provided by the VPPA." Compl. ¶¶ 49-54. The court agrees with the defendants that such allegations reflect a misunderstanding of the federal statute. Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002). Thus, "[o]ne cannot go into court and claim a violation of § 1983," since "§ 1983 by itself does not protect anyone against anything." Id. (internal citation and quotation marks omitted).

      In their brief in opposition to the defendants' motion, the plaintiffs argue that their allegations are sufficient to establish that Heltzel and Babb deprived them of their "Fifth

7

Amendment right to liberty," and also state "a claim of retaliatory conduct based on the free exercise of the First Amendment."[1]  Br. in Opp'n to Mot. to Dismiss 11.  For the following reasons, however, the court concludes that neither claim is plausible under the facts alleged.

## A.    <u>Due Process</u>

The Fourteenth Amendment to the United States Constitution provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law."[2]  U.S. Const. amend. XIV, § 1.  "[I]n order to claim entitlement to the protections of the due process clause -- either substantive or procedural -- a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'"  <u>Stone v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 167, 172 (4th Cir. 1988) (internal citations omitted).  Unless the plaintiff makes such showing, "the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated."  <u>Id.</u>

In their brief in opposition to the defendants' motion, the plaintiffs claim that the defendants "deprived [them] of their liberty interests" by interfering with their ability to participate in the procurement process, and that their allegations in this regard are sufficient to state the type of due process claim that is sometimes referred to as a "stigma plus claim."  Br. in Opp'n to Mot. to

---

[1] The court notes that Count I of the complaint makes no reference to any federal constitutional provision and instead refers solely to the "rights provided by the VPPA."  Compl. ¶¶ 49-54.  Nonetheless, the court will consider both the plaintiffs' complaint and their response to the defendants' motion in determining whether the plaintiffs' allegations are sufficient to withstand review under Rule 12(b)(6).

[2] Although the plaintiffs specifically refer to their "Fifth Amendment right to liberty" in their brief in opposition, that amendment applies only to federal officials.  <u>See</u> <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); <u>see also</u> <u>Bergdoll v. City of York</u>, 515 F. App'x 165, 170 (3d Cir. 2013) ("Bergdoll's Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials.").

Dismiss 7-9. In order to bring such claim, however, plaintiffs "must allege both a stigmatic statement and a state action that distinctly altered or extinguished [their] legal status." Evans v. Chalmers, 703 F.3d 636, 645 (4th Cir. 2012) (internal citation and quotation marks omitted). Because neither the complaint nor the plaintiffs' brief in opposition describes the type of communication that gives rise to a protected liberty interest, the plaintiffs' due process claim is subject to dismissal.

In order to state this particular type of due process claim, plaintiffs must not only allege that false statements were made about them that placed a stigma on their reputation, but also that such statements were made public. Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). To satisfy the stigma element, "defamatory statements must at least 'imply the existence of serious character defects such as dishonesty or immorality;'" accusations of "incompetence or unsatisfactory job performance" are insufficient. Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996) (quoting Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982)). To satisfy the element of public disclosure, plaintiffs must allege that a statement was actually disclosed to a prospective employer or the public at large, or that there is a likelihood of actual disclosure. Sciolino, 480 F.3d at 648 n.4, 650.

In this case, the only statement alleged in the complaint that even arguably meets the stigma element is Babb's statement indicating that Thirty Three had been found to be a "non-responsible bidder" under the VPPA.[3] Compare Malapanis v. Regan, 340 F. Supp. 2d 184, 194 (D. Conn. 2004) (declining to reach the "more difficult issue" of "whether [a] 'non-responsible bidder' designation itself implicates a liberty interest"), with Lanier Constr. Co.

---

[3] The VPPA defines a "responsible bidder" as a "a person who has the capability, in all respects, to perform fully the contract requirements and the moral and business integrity and reliability that will assure good faith performance, and who has been prequalified, if required." Va. Code § 2.2-4301.

9

v. City of Clinton, 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011) (holding that "[t]he implication that Lanier was not a 'responsible' bidder, even if it caused harm to Lanier's reputation, [was] not sufficient to implicate a liberty interest") (citing Robertson, 679 F. 2d at 1092).   Even if the court assumes, without deciding, that a non-responsible bidder designation implies the existence of serious character defects and, thus, satisfies the stigma element, the plaintiffs' allegations fail to establish that the designation was sufficiently publicized so as to deprive the plaintiffs of a protected liberty interest.

As explained above, "[a] stigmatizing allegation does not implicate liberty interests unless it is publicized."   Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1367 (11th Cir. 1993) (citing Bishop v. Wood, 426 U.S. 341, 348 (1976)); see also Sciolino, 480 F.3d at 646.   In this case, the plaintiffs' complaint is devoid of any allegation that Babb's statement regarding Thirty Three's status as a non-responsible bidder was actually disclosed to the public, or that there is a likelihood of such disclosure.   Instead, the plaintiffs allege that the statement was made in a letter to Thirty Three's counsel, which was sent in response to counsel's own letter on Thirty Three's behalf. Under existing precedent, such a private communication cannot form the basis of a liberty interest claim under the due process clause.   See Bishop, 426 U.S. at 348 (holding that a private communication "cannot properly form the basis for a claim that [a plaintiff's] interest in his good name, reputation, honor, or integrity was thereby impaired") (internal quotation marks omitted); see also Sherman v. City of Richmond, 543 F. Supp. 447, 450 (E.D. Va. 1982) (holding that the plaintiff's liberty interest claim failed where there was no claim or suggestion that the sheriff's department disseminated information about the plaintiff to anyone but the plaintiff and the plaintiff's lawyer).   In the absence of any suggestion that Thirty Three's designation as a non-responsible bidder may be available to the public, much less that there is a "likelihood" of

10

public disclosure, the court concludes that the plaintiffs' complaint fails to state a plausible due process claim.  Sciolino, 480 F.3d at 645; see also RJB Props. v. Bd. of Educ., 468 F.3d 1005, 1011 (7th Cir. 2006) (holding that a memorandum indicating that the plaintiff was determined to be a non-responsible bidder did not give rise to an actionable due process claim where there was no evidence that the memorandum was publicly disseminated).

### B.  First Amendment Claim

The plaintiffs alternatively argue that the allegations in their complaint are sufficient to state "a claim of retaliatory conduct based on the free exercise of the First Amendment."  Br. in Opp'n to Mot. to Dismiss 11.  The plaintiffs specifically cite to the "the complaints made to the Virginia Delegate and the Governor's office by Mr. Caperton's relative," which "pointed to incidents of inappropriate behavior by multiple employees of VDOT that led to an investigation." Id.  The plaintiffs claim that "the decision to exclude Mr. Caperton and any company affiliated with him from eligible contracting status was made in part in response to the complaints made . . . by Mr. Caperton's relative."  Id.

It is well-settled that "[t]he First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."  Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).  A plaintiff seeking to recover for First Amendment retaliation must allege: (1) that he "engaged in protected First Amendment activity"; (2) that the defendants "took some action that adversely affected [his] First Amendment rights; and (3) that "there was a causal relationship between [his] protected activity and the defendants' conduct."  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

11

Here, the plaintiffs do not allege that they were the subject of retaliation for their own protected speech. Instead, the plaintiffs claim that the VDOT employees retaliated against them for statements made by Caperton's relative. They fail to explain, however, how they have standing to assert the relative's First Amendment rights. As a general rule, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). In the context of First Amendment retaliation claims, courts have held that a plaintiff may assert the constitutional claims of a third party only "if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) some hindrance to the third party's ability to protect his or her own interests." Camacho v. Brandon, 317 F.3d 153, 159 (2d Cir. 2003); see also Wasson v. Sonoma Cnty. Junior Coll., 203 F.3d 659, 663 (9th Cir. 2000) (same). "Implicit in [this] formulation is the requirement that the third party . . . has a constitutional claim." Huth v. Haslun, 598 F.3d 70, 75 (2d Cir. 2010) (emphasis in original).

In this case, there is no allegation that Caperton's relative suffered any injury from the allegedly protected speech. See id. ("Huth does not allege that Archer suffered any retaliation for her activities, or more broadly, that Archer's constitutional rights were violated in any way."). Even if such injury were alleged, the plaintiffs have not articulated any "hindrance" that would prevent the relative from asserting his or her own rights. Accordingly, the plaintiffs lack standing to assert a First Amendment retaliation claim on behalf of Caperton's relative. Because the plaintiffs cannot otherwise bring a First Amendment claim based on speech that they did not make, the court concludes that their complaint fails to state a plausible claim of retaliation in violation of the First Amendment. See Lewis v. Richmond City Sheriff's Office, No. 3:13cv721, 2014 U.S.

12

Dist. LEXIS 72048, at *6 (E.D. Va. May 27, 2014) (emphasizing that courts have "unanimously held that a plaintiff cannot bring a personal First Amendment claim based on speech [the plaintiff] did not make," and that if such claims were allowed to go forward, "it would open the doors for any disgruntled employee to come forward and claim retaliation based on someone else's public gripes").

For these reasons, the court concludes that the plaintiffs' complaint, even liberally construed, fails to state a viable constitutional claim under § 1983 against any of the named defendants. Accordingly, Counts I and II of the plaintiffs' complaint will be dismissed.

## II.    Claims under state law

Having dismissed the federal claims forming the basis of the court's exercise of jurisdiction over this dispute, the court declines to exercise supplemental jurisdiction over the remaining claims asserted under state law. See 28 U.S.C. § 1367(c)(3). The court will remand the state-law claims to the Circuit Court of Culpeper County for consideration.

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted with respect to Counts I and II of the plaintiffs' complaint. The remaining claims under state law will be remanded to the Circuit Court of Culpeper County.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 28th day of October, 2015.


              /s/    Glen E. Conrad
              Chief United States District Judge