CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 12 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| FRED T. CAPERTON, III, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:15CV00036 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| VIRGINIA DEPARTMENT OF ) | By: Hon. Glen E. Conrad |
| TRANSPORTATION, et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

Fred Caperton, Thirty Three, Inc., and Appearance Landscaping & Maintenance, Inc. filed this action in the Circuit Court of Culpeper County against the Virginia Department of Transportation ("VDOT") and two VDOT employees, Emmet Heltzel and Angelica Babb, asserting claims under 42 U.S.C. § 1983 and Virginia law. The defendants removed the case to this court on the basis of federal question jurisdiction, and then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Following a hearing on the defendants' motion, the court dismissed the plaintiffs' federal claims under § 1983 and remanded the state-law claims. The plaintiffs have since filed a motion to amend the judgment and for leave to file an amended complaint. For the reasons that follow, the plaintiffs' motion will be denied.

**Factual Background**

The following facts, taken from the plaintiffs' proposed amended complaint, are accepted as true for purposes of the pending motion. See Hall v. Greystar Mgmt. Servs., L.P., 637 F. App'x 93, 94 (4th Cir. 2016) (citing Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 300 n.3 (4th Cir. 2006)).

Fred Caperton, who resides in Culpeper, Virginia, operates two companies that provide "hauling, site maintenance . . . , winter weather preparation[,] snow and ice removal, and landscaping" services. Proposed Am. Compl. ¶¶ 9-11. One of those companies, Appearance Landscaping, Inc. ("Appearance"), was formed in January of 2006. The other, Continental Land Development, Inc. ("Continental"), was formed in July of 2006.

Following its incorporation, Continental successfully bid on a number of contracts with VDOT for the performance of snow removal services. Continental also entered into snow removal equipment agreements ("M-7B Agreements") with VDOT, pursuant to which Continental provided equipment on an on-call basis.

Continental was awarded snow removal contracts for three routes during the winter of 2013-2014 (the "2013-2014 Route Bid Contracts"). In January of 2014, VDOT personnel complained about the work performed by Continental. That same month, VDOT issued Notices of Contract Deficiencies. Although Continental disputed the validity of VDOT's complaints and attempted to remedy the alleged deficiencies, VDOT issued Notices of Contract Termination to Continental on February 10 and 11, 2014, which terminated two of the 2013-2014 Route Bid Contracts for cause and the third for convenience. Continental received no further communication from VDOT after these notices were issued.

In March of 2014, Caperton's wife, Lauren Caperton ("Lauren"), formed Thirty Three, Inc. ("Thirty Three") for the purpose of providing hauling, site maintenance, winter weather preparation, and snow and ice removal services. A few months later, Heltzel, a state maintenance engineer for VDOT, "issued internal correspondence to VDOT Maintenance Managers, Infrastructure Managers, and Assistant District Administrators [advising] that VDOT would not do business with either Continental Land Development, Inc. or Thirty Three, Inc.," and that the

2

companies "'had been placed in default from the competitive bid process.'" Id. ¶ 33. Neither Caperton nor his wife was notified of this decision.

On September 17, 2014, Caperton submitted a proposed M-7B Agreement to VDOT on behalf of Thirty Three. Twelve days later, Caperton submitted a proposed M-7B Agreement to VDOT on behalf of Appearance. The plaintiffs allege that Babb, a procurement manager for VDOT, "instructed other VDOT personnel not to accept any M-7B Agreement proposals signed by Mr. Caperton, or any other agreements indicating that any portion of the work would be performed by Mr. Caperton or by vehicles or equipment owned by Mr. Caperton." Id. ¶ 43.

After Thirty Three's proposed M-7B Agreement was rejected by VDOT, Lauren emailed Babb and requested an explanation. In response, Babb indicated that "VDOT cannot and does not prohibit any vendor from submitting a bid." Id. ¶ 46 (internal quotation marks omitted). Babb went on to indicate that the reason Thirty Three's M-7B Agreement was rejected was because of Caperton's association with the business.

On October 1, 2014, Caperton emailed a VDOT contracts administrator and asked whether his vehicles could be leased to other vendors that perform snow removal services for VDOT. In response, a VDOT infrastructure manager advised Caperton that "the decision not to accept a proposal from . . . Caperton was based on an investigation of the bidder's qualifications." Id. ¶ 49.

On October 10, 2014, counsel for Thirty Three sent Babb a letter rebutting the "facts and findings" in her earlier correspondence. Id. ¶ 50. Babb sent a response to counsel on October 20, 2014. In her response, Babb indicated that Thirty Three "had been determined a Non-Responsible Bidder by VDOT as that term is used in the [Virginia Public Procurement Act (VPPA)], specifically finding that Thirty Three, Inc. 'lacks business integrity and reliability that

3

will ensure good faith performance.'" Id. ¶ 51. The plaintiffs allege that, in making the non-responsibility determination, VDOT did not comply with the applicable provisions of the VPPA. See id. ¶ 52 (citing Va. Code § 2.2-4359).

The plaintiffs also allege that "[a] finding of 'non-responsibility' or 'ineligibility' by a Commonwealth purchasing entity may affect a bidder's qualification to bid on other public procurement contracts in the future under the [Virginia Vendor's] Manual." Id. ¶ 40. The plaintiffs emphasize that the Vendor's Manual, which is "published by the Commonwealth's Department of General Services and utilized by VDOT and other Virginia public bodies and agencies, specifically requires the consideration of a vendor's past performance," and that "the VPPA permits inspection of a vendor's 'record of integrity' as [a] factor[] in determining whether a bidder is a 'responsible bidder.'" Id. at 64. Consequently, the plaintiffs allege that "[t]he stain of a determination of non-responsibility may likely follow both Caperton and Thirty Three as Commonwealth agency procurers subject to the Virginia Vendor's Manual are required to investigate into past non-responsibility and eligibility status." Id. at 65.

## Procedural History

In April of 2015, Caperton, Thirty Three, and Appearance Landscaping filed the instant action against VDOT, Heltzel, and Babb in the Circuit Court of Culpeper County. In Count I of the complaint, the plaintiffs claimed that Heltzel and Babb "violat[ed]" 42 U.S.C. § 1983 by depriving them of their ability to participate in the procurement process "in derogation [of] the rights and process provided by the VPPA." Compl. ¶ 49-50. In Count II, the plaintiffs claimed that VDOT "violat[ed]" § 1983 by "conduct[ing] its procurement process in violation of the VPPA, in derogation of the procedures demanded by [the] Virginia Code[,] and without proper oversight." Id. ¶ 61. In Count III, the plaintiffs claimed that the defendants wrongfully deprived

4

Caperton, Thirty Three, and Appearance of the "ability to participate in public procurement in derogation of the rights and process provided by the VPPA." Id. ¶¶ 64-66. In Count IV, the plaintiffs claimed that the defendants retaliated against them in violation of the Virginia Fraud and Abuse Whistle Blower Protection Act.

The defendants subsequently removed the action to this court, asserting federal question jurisdiction under 28 U.S.C. § 1331. Upon removal, the defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On October 28, 2015, the court issued a memorandum opinion and order granting the defendants' motion with respect to the claims asserted under § 1983. The court concluded that VDOT was immune from liability under the Eleventh Amendment, and that the plaintiff's allegation that the defendants "violated" § 1983 by taking actions "in derogation of rights provided by the VPPA" was otherwise insufficient to state a plausible claim for relief. See Caperton v. Va. Dep't of Transp., No. 3:15CV00036, 2015 U.S. Dist. LEXIS 145926, at *10 (W.D. Va. October 28, 2015) ("Section 1983 'merely provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured by the Constitution and laws of the United States.' Thus, '[o]ne cannot go into court and claim a violation of § 1983,' since '§ 1983 by itself does not protect anyone against anything.'") (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 28 (2002)).

In their brief in opposition to the defendants' motion to dismiss, the plaintiffs claimed, for the first time, that Heltzel and Babb "deprived [them] of their liberty interests" by interfering with their ability to participate in the procurement process, and that their allegations were sufficient to state a "stigma-plus" due process claim. Br. in Opp'n to Mot. to Dismiss 7-9. The court ultimately disagreed, concluding that even if the non-responsible bidder designation placed a

5

stigma on the plaintiffs' reputation,[1] the plaintiffs' allegations failed to establish that the designation was sufficiently publicized so as to give rise to a protected liberty interest. Caperton, 2015 U.S. Dist. LEXIS 145926, at *14; see also Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1367 (11th Cir. 1993) (explaining that "[a] stigmatizing allegation does not implicate liberty interests unless it is publicized"); RJB Props. v. Bd. of Educ., 468 F.3d 1005, 1101 (7th Cir. 2006) (holding that a memorandum indicating that the plaintiff was determined to be a non-responsible bidder did not give rise to an actionable due process claim where there was no evidence that the memorandum was publicly disseminated). In light of that conclusion, the court found it unnecessary to address the other elements required to state a stigma-plus claim.

The plaintiffs have since filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) and for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a), which the defendants oppose. The proposed amended complaint includes additional allegations relevant to the public disclosure element of the plaintiffs' stigma-plus claim. See Sciolino v. City of Newport News, 480 F.3d 642, 650 (4th Cir. 2007) (holding that a statement is sufficiently publicly disseminated if the plaintiff alleges a likelihood of actual disclosure to prospective employers or the public at large). The plaintiffs allege that state agencies are required to investigate a bidder's reputation and record of integrity, and, thus, that a

---

[1] To satisfy the stigma element, "defamatory statements must at least 'imply the existence of serious character defects such as dishonesty or immorality;'" accusations of "incompetence or unsatisfactory job performance" are insufficient. Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996) (quoting Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982)). In the previous opinion, the court noted that the only statement alleged in the plaintiffs' complaint that even arguably satisfied this element was Babb's statement indicating that Thirty Three had been found to be a "non-responsible bidder" under the VPPA. See Va. Code § 2.2-4301 (defining a "responsible bidder" as a "a person who has the capability, in all respects, to perform fully the contract requirements and the moral and business integrity and reliability that will assure good faith performance, and who has been prequalified, if required.")

6

finding of non-responsibility "may affect a bidder's qualification to bid on other public procurement contracts in the future under the [Virginia Vendor's] Manual." Am. Compl. ¶ 40.

### Standard of Review

A district court may not grant a post-judgment motion to amend unless the judgment is vacated pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 470 (4th Cir. 2011); Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards." Katyle, 637 F.3d at 471. Instead, "[t]he court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant [Rule] 15(a)." Id.

Rule 15(a) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Matrix Capital Mgm't Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009).

An amendment is futile if the amended claim would fail to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

7

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## Discussion

The Fourteenth Amendment to the United States Constitution protects citizens from being deprived of "liberty" or "property" without "due process." U.S. Const. amend. XIV, § 1. In order to prevail on a procedural due process claim, a plaintiff must show: "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011). In this case, the plaintiffs do not claim to have had a property interest in the M-7B Agreements rejected by DMV. Instead, the plaintiffs claim that they were deprived of a liberty interest without due process. For the following reasons, the court concludes that the plaintiffs' procedural due process claim would not withstand review under Rule 12(b)(6) and, thus, that their proposed amendments would be futile.

### I. Due Process Implications of Refusing to Accept Snow Removal Equipment Agreements from Plaintiffs

In their brief in support of the pending motion, the plaintiffs first argue that the defendants' "decision to not allow plaintiffs to participate in snow removal contracts for the winter of 2014-2015," standing alone, "improperly affect[ed] plaintiffs' liberty interest in enjoying [their] status as an eligible bidder permitted to participate in public contracts." Pls.' Br. in Supp. of Mot. to Amend 2. The plaintiffs do not cite any caselaw to support this argument. To the extent the plaintiffs' brief could be construed to suggest that the defendants deprived them of their occupational liberty, the court concludes that such argument is without merit.

The liberty interests protected by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." Bd. of Regents v. Roth, 408 U.S. 564, 572

8

(1972). "This right, however, is not so broad as to protect an individual's right to a particular job." Baker v. McCall, 842 F. Supp. 2d 938, 948 (W.D. Va. 2012). Instead, "[i]t is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259-60 (3d Cir. 1994) (citation and internal quotation marks omitted); see also Blackout Sealcoating, Inc. v. Peterson, 733 F.3d 688, 690 (7th Cir. 2013) ("[T]his court's decisions . . . hold that the removal of one job or employer from the universe of all jobs does not affect occupational liberty. Other circuits agree.") (collecting cases); Llamas v. Butte Cmty. College Dist., 238 F.3d 1123, 1128 (9th Cir. 2001) ("We have consistently held that people do not have liberty interests in a specific employer . . . . The decision to bar Llamas from future employment with the District did not violate his due process rights.").

In this case, the plaintiffs do not claim that they lost the ability to pursue their particular calling or line of work, i.e., "the business and trade of hauling, site maintenance services, winter weather preparation and snow and ice removal, and landscaping." Proposed Am. Compl. ¶ 9. Nor do they allege that they lost other public contracts as a result of the defendants' actions, or that the defendants' actions affected their ability to work in the private sector. Rather, the plaintiffs allege only that the defendants "improperly affected [their] liberty interest" by not "allow[ing] plaintiffs to participate in snow removal contracts [with VDOT] for the winter of 2014-2015." Pls.' Br. in Supp. of Mot. to Amend 2. As the foregoing decisions make clear, such allegations fall short of demonstrating that the defendants' actions implicated a cognizable liberty interest. See also Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1217 n.5 (11th Cir. 1995) (holding that the decision to remove the plaintiffs from a wrecker rotation list maintained by a county sheriff's office did not "cognizably burden the plaintiffs' liberty to follow a chosen profession free

9

from unreasonable government interference," since the decision did "not affect their right to operate wrecker service businesses, to remove vehicles from public property at the request of the owners, or to provide wrecker services to any member of the public who requests such services"). Accordingly, the defendants' decision to reject the plaintiffs' snow removal equipment agreements did not deprive the plaintiffs of their occupational liberty.

## II. The Due Process Implications of the Non-Responsibility Finding

The plaintiffs also claim that the defendants deprived them of their liberty interest in their reputation by rejecting the M-7B Agreement proposal submitted on behalf of Thirty Three, and stating that Thirty Three "had been determined a non-responsible bidder by VDOT as that term is used in the VPPA." Proposed Am. Compl. ¶ 51. The plaintiffs allege that a "specific finding" was made that Thirty Three "lacks the 'business integrity and reliability that [would] ensure good faith performance,'" Id. (quoting Va. Code § 2.2-4301), and that this finding "may likely follow both Caperton and Thirty Three as Commonwealth agency procurers subject to the Virginia Vendor's Manual are required to investigate into past non-responsibility and eligibility status." Id. ¶ 65.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectable liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." Martin Marietta Materials, Inc. v. Kan. Dep't of Transp., 810 F.3d 1161, 1184 (10th Cir. 2016) (citation and internal quotation marks omitted). "[I]njury to reputation by itself," however, is not sufficient. Siegert v. Gilley, 500 U.S. 226, 234 (1991) (citing Paul v. Davis, 424 U.S. 693, 708-09 (1976)). "Instead, a plaintiff must demonstrate that his reputational injury was accompanied by a state action that

10

'distinctly altered or extinguished' his legal status if he wants to succeed." Shirvinski v. United States Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (citing Paul, 424 U.S. at 711).

This particular type of due process claim has come to be known as a "stigma-plus" claim. See Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012). To state such a claim, a plaintiff must allege that a charge against him placed a stigma on his reputation; was made public; was false; and was made in conjunction with the termination of employment or some other action that distinctly altered or extinguished his legal status. See Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007) (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988); Evans, 703 F.3d at 654 (citing Shirvinski, 673 F.3d at 315). If the plaintiff can establish a protected liberty interest under this framework, the plaintiff must show that he was not afforded "due process, which in this context involves a 'name-clearing hearing.'" Harrell v. City of Gastonia, 392 F. App'x 197, 203 (4th Cir. 2010). Ultimately, "the constitutional harm is not the defamation itself; rather it is the denial of a hearing at which the [person] has an opportunity to refute the public charge." Sciolino, 480 F.3d at 649 (citation and internal quotation marks omitted).

Here, as summarized above, the court previously assumed that a non-responsible bidder designation under the VPPA implies the existence of a serious character defect and, thus, is sufficiently stigmatizing to satisfy the first element of a stigma-plus claim. In dismissing the claim, the court concluded that the plaintiffs had failed to allege that the non-responsibility finding was actually disclosed to a prospective employer or the public at large, or that there was a likelihood of such disclosure. See id. at 650 (addressing the public disclosure requirement). The plaintiffs have attempted to remedy this deficiency by alleging, in the proposed amended complaint, that state agencies are required to investigate a bidder's reputation. In light of this

11

requirement, the plaintiffs allege that Thirty Three's designation as a non-responsible bidder would likely be made available to another agency of the Commonwealth if Thirty Three elected to bid on a public contract with that agency. See id. at ¶ 40 ("A finding of 'non-responsibility' . . . by a Commonwealth purchasing agency may affect a bidder's qualifications to bid on other public procurement contracts in the future under the Manual.").

Even assuming that these additional allegations would satisfy the public disclosure element, the court nonetheless concludes that the stigma-plus claim would not survive a motion to dismiss. First, the plaintiffs have failed to allege sufficient facts to establish that the finding of non-responsibility "was accompanied by a state action that 'distinctly altered or extinguished' [their] legal status" (i.e., the "plus" prong of the "stigma-plus" test). Shirvinski, 673 F.3d at 315. In cases such as this, plaintiffs "must show that [their] 'skills . . . were rendered largely unmarketable as a result of the agency's acts.'" Id. (quoting Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1507 (D.C. Cir. 1995)). In other words, "the [plaintiffs'] good name, reputation, honor or integrity must be called into question in a manner that makes it virtually impossible for the [them] to find new employment in [their] chosen field." RJB Properties, Inc. v. Bd. of Educ. of the City of Chicago, 468 F.3d 1005, 1011 (7th Cir. 2006) (citation and internal quotation marks omitted).

The plaintiffs' allegations simply do not meet this "demanding test." Shirvinski, 673 F.3d at 315. While the plaintiffs allege that they were denied the opportunity to provide snow removal equipment to VDOT during the winter of 2014-2015, and that the non-responsibility finding "may" affect their ability to obtain other public procurement contracts, the plaintiffs do not allege that they are "formally excluded from government contracts," or "effectively barred from pursuing [their] chosen trade." Id. at 316. Indeed, the proposed amended complaint indicates that snow

12

removal is only one of several services that the plaintiffs provide. There is no indication that the defendants' actions have "closed many other doors" and "effectively prevented [the plaintiffs] from getting other people's [snow removal, hauling, site maintenance, or landscaping] business." Blackout Sealcoating, 733 F.3d at 690; see id. (affirming the dismissal of the plaintiff's procedural due process claim where the plaintiff failed to allege that it had submitted bids to other public agencies that had been turned down, or that the transit authority's actions had negatively affected the plaintiff's portfolio of private contracts); Martin Marietta Materials, 810 F.3d at 1186 (observing that "[n]umerous courts have declined to find a liberty interest when the plaintiff is denied government business, but can still engage in private business"); Thinkstream, Inc. v. Adams, 251 F. App'x 282, 284 (5th Cir. 2007) (emphasizing that "the loss of isolated contracts" does "not rise to the level of a significant alteration of a liberty interest"). For these reasons, the court concludes that the proposed amended complaint fails to satisfy the "plus" prong of the "stigma-plus" test.

The court further concludes that the plaintiffs have not alleged sufficient facts to establish that they were denied due process, "which in this context involves a 'name-clearing hearing.'" Harrell, 392 F. App'x at 203. As the Fourth Circuit has previously explained, "a due process violation 'is not complete' when the asserted deprivation occurs; rather it is only complete when the government 'fails to provide due process.'" Ashley v. N.L.R.B., 255 F. App'x 707, 710 (4th Cir. 2007) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990). "Accordingly, where 'there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.'" Id. (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

13

In the instant case, the plaintiffs had post-deprivation remedies under the VPPA. In addition to enabling public bodies to establish an administrative procedure for hearing appeals from disqualifications and determinations of non-responsibility, see Va. Code § 2.2-4365, the VPPA provides that any "bidder or offeror . . . who is refused permission or disqualified from participation in bidding or competitive negotiation, or who is determined not to be a responsible bidder or offeror for a particular contract, may bring an action in the appropriate circuit court challenging that decision." Va. Code § 2.2-4364. The plaintiffs do not allege that these post-deprivation remedies were unavailable, or that they would not have provided an adequate opportunity to clear the plaintiffs' names. Accordingly, the court concludes that the procedural due process claim also fails on this ground. See Howell v. Marion Sch. Dist. One, No. 4:07-cv-1811-RBH, 2009 U.S. Dist. LEXIS 22723, at *53 n.7 (D.S.C. Mar. 19, 2009) ("Plaintiff could have appealed the District Board's decision to terminate his employment to the Circuit Court. Because adequate post-deprivation state remedies were available to provide Plaintiff with the opportunity to challenge the District Board's decision, Plaintiff cannot state a procedural due process claim under § 1983."); see also Guerra v. Jones, 421 F. App'x 15, 19 (2d Cir. 2011) ("The appropriate remedy for a stigma-plus claim . . . is a post-deprivation name-clearing hearing . . . . Here, Guerra had available to him adequate process in the form of a post-deprivation Article 78 hearing in state court."); Cotton v. Jackson, 216 F.3d 1328, 1333 (11th Cir. 2000) ("Because we believe that the writ of mandamus would be available under state law to Plaintiff, and because we believe that mandamus would be an adequate remedy to ensure that Plaintiff was not deprived of his due process rights, we conclude that Plaintiff has failed to show that inadequate state remedies were available to him to remedy any alleged procedural deprivations.").

14

## Conclusion

For the reasons stated, the court remains convinced that the plaintiffs have failed to state a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment. Accordingly, their motion to amend the court's judgment and for leave to file an amended complaint will be denied.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of September, 2016.

*/s/ Conrad*
Chief United States District Judge